UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald Earl CLAY, Defendant–Appellant.

No. 96–5017.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1997.

Decided June 27, 1997.

David A. Marye, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Lexington, Kentucky, for Plaintiff–Appellee.

Patrick F. Nash (argued and briefed), Lexington, KY, for Defendant–Appellant.

Before: MARTIN, Chief Judge; NORRIS and MOORE, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant, Ronald Earl Clay, appeals the sentence imposed following his guilty plea to one count of possessing cocaine with intent to distribute, on or about March 9, 1995, in violation of 21 U.S.C. § 841. Defendant argues that the district court improperly (1) enhanced his sentence for using a juvenile in a drug trafficking offense pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2D1.2; (2) increased his base offense level for being an organizer, leader, manager, or supervisor in a criminal activity involving less than five persons pursuant to U.S.S.G. § 3B1.1(c); and (3) refused to grant him a downward adjustment to his base offense level for timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.[1] The facts of this case are not in dispute.

First, defendant challenges the district court's use of U.S.S.G. § 2D1.2 to determine his base offense level. Defendant argues that while that section applies to drug offenses involving juveniles,[2] it applies only to convictions under 21 U.S.C. §§ 859, 860,

---

1. The district court used the 1995 edition of the *Guidelines Manual.*

2. Section 2D1.2 applies to "Drug Offenses Occurring Near Protected Locations or Involving Underage or Pregnant Individuals," as well as attempts or conspiracies to commit such offenses. It provides that in such cases, the base offense level is the greater of:

(1) **2** plus the offense level from § 2D1.1 applicable to the quantity of controlled sub-

stances directly involving a protected location or an underage or pregnant individual; or

(2) **1** plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or

(3) **26**, if the offense involved a person less than eighteen years of age; or

(4) **13**, otherwise.

U.S.S.G. § 2D1.2(a).

and 861.[3] He maintains that § 2D1.1, which covers drug offenses more generally, and which would provide for a base offense level two points lower than that arrived at through the application of § 2D1.2, is the appropriate guideline for determining the offense level where the conviction is obtained under 21 U.S.C. § 841. The application of a guideline to undisputed facts presents a question of law, and is reviewed de novo by this court. *United States v. Wilson*, 920 F.2d 1290, 1294 (6th Cir.1990).

The Fourth Circuit's decision in *United States v. Locklear*, 24 F.3d 641 (4th Cir.1994), supports the position that § 2D1.2 does not apply to convictions under 21 U.S.C. § 841.[4] The *Locklear* court reached this conclusion relying largely upon the fact that the Commentary to § 2D1.2 lists as the "Statutory Provisions" to which it is applicable 21 U.S.C. §§ 859, 860, and 861, but not § 841. However, Application Note 3 to U.S.S.G. § 1B1.1, which provides the application instructions for all guidelines, clearly states that "[t]he list of 'Statutory Provisions' in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline." U.S.S.G. § 1B1.1, comment. (n.3). Moreover, Application Note 6 to U.S.S.G. § 1B1.3, which addresses factors that determine the guideline range, states that some guidelines may expressly direct that a particular factor be applied only where the defendant was convicted under a particular statute; as an example, the Note cites § 2S1.1, which applies only "if the defendant is convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)." The Note goes on to state that "[u]nless such an express direction is included, conviction under the statute is not required." U.S.S.G. § 1B1.3, comment. (n.6). Section 2D1.2, at issue here, contains

no such express direction, and thus, contrary to *Locklear*, its application is not limited to convictions under any particular statutes.

The *Locklear* court also took note of the procedure which must be followed in applying the guidelines. The first step, as set forth in § 1B1.2(a), is to "[d]etermine the offense guideline section ... most applicable to the offense of conviction." Next, § 1B1.2(b) and Application Note 2 direct the court to consider any applicable specific offense characteristics "under that guideline." The court then assumed that § 2D1.1 was the applicable offense guideline, and that the involvement of a juvenile is a specific offense characteristic. The court concluded that it would be erroneous to look to § 2D1.2 in determining the sentence, since to do so would amount to considering a specific offense characteristic which does not arise under the guideline deemed most applicable to the offense of conviction. The court was mistaken, however, in assuming that § 2D1.1 is the offense guideline most applicable to the offense of conviction in cases like *Locklear* and the instant case. Application Note 3 to § 1B1.2 states that in determining the applicable guideline, it is "appropriate that the court consider the actual conduct of the offender, even when such conduct does not constitute an element of the offense." U.S.S.G. § 1B1.2 comment. (n.3). Thus, while § 2D1.2 certainly applies to offenses like those described in 21 U.S.C. §§ 859, 860, and 861, where the involvement of minors or proximity to their schools is an element of the offense, it also applies in cases involving conviction for other offenses (including convictions under 21 U.S.C. § 841), if the conduct of the offender brings him within the scope of § 2D1.2.[5] Thus, in cases like *Lock-*

---

**3.** Each of these sections requires the involvement of minors or proximity to schools as an element of the offense. *See* 21 U.S.C. § 859 (distribution to persons under age twenty-one); 21 U.S.C. § 860 (distribution or manufacturing in or near schools and colleges); 21 U.S.C. § 861 (employment or use of persons under 18 years of age). 21 U.S.C. § 841, under which defendant was convicted, does not include involvement of minors as an element of the offense. However, a juvenile was in fact involved in the commission of the offense.

**4.** Like the instant case, *Locklear* involved the application of § 2D1.2 where the conviction was under a section other than 21 U.S.C. §§ 859, 860, or 861, but the actual commission of the offense clearly involved a juvenile.

**5.** This conclusion is buttressed by Application Note 1 to § 1B1.3, which states:

The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability.... [T]he focus is on the specific acts and omissions for which the de-

*lear* and the instant case, where the defendant involved a juvenile in committing a drug offense, § 2D1.2 is the offense guideline most applicable to the offense of conviction.

We have previously adopted this line of reasoning in *United States v. McDowell*, 902 F.2d 451 (6th Cir.1990). In that case, we held that it was appropriate to consider the fact that defendant's crack house was located near a school under the old § 2D1.3 of the guidelines (now incorporated into § 2D1.2), even though defendant's conviction did not arise under a statute that required proximity to a school as an element of the offense, because the actual conduct underlying defendant's conviction came within the scope of that section. We noted that the guidelines are clear that conduct other than that for which the defendant has been convicted may be considered by the court in determining an appropriate sentence. *McDowell*, 902 F.2d at 453.

■ Defendant attempts to distinguish *McDowell* on the ground that the court in that case considered whether the proper base offense level was selected, not whether a base offense level already calculated under § 2D1.1 was properly enhanced as we have had to do in this case. However, this is not a valid distinction. Calculating the offense level under § 2D1.2 requires first calculating what the offense level would be under 2D1.1, since the former section references the latter as a starting point. *See* § 2D1.2(a)(1), (2). Where, as here, the facts underlying a conviction under 21 U.S.C. § 841 indicate the involvement of a juvenile, § 2D1.2 is the appropriate section for the district court to rely upon in determining the defendant's sentence. *See United States v. Oppedahl*, 998 F.2d 584 (8th Cir.1993) (upholding application of U.S.S.G. § 2D1.2 to violation of statute other than those listed in Commentary to that section). To the extent the district court may have erred in referring to the application of § 2D1.2 as an enhancement to the base offense level calculated under § 2D1.1, rather than as an initial determination of the base offense level, the error is

harmless, since the resulting sentence is the same.

■ Defendant further argues that even if § 2D1.2 is potentially applicable to convictions under 21 U.S.C. § 841, there was not a sufficient factual basis to justify applying it in his sentencing. The existence of a sufficient factual basis for applying a guideline is a question of fact, and the district court's determination will not be overturned unless it is clearly erroneous. *United States v. Barrett*, 890 F.2d 855, 867 (6th Cir.1989). Despite defendant's claim to the contrary, there was a more than sufficient factual basis for the district court's finding that he involved a juvenile in a drug offense. At the time of his arrest, defendant was in the company of a female juvenile who was concealing large quantities of cocaine. Louis Leach, the third individual present, stated that he watched defendant and the juvenile engage in drug sales, with defendant handling the larger transactions and the juvenile handling the smaller ones. Leach stated that the juvenile held the money and drugs between transactions, handing the drugs over to defendant for the transactions he handled, and reclaiming the money and any remaining drugs after each transaction. Leach also stated that the juvenile followed defendant's instructions when she hid the cocaine as police approached. Given these facts, the district court did not err when it applied § 2D1.2 based upon its finding that defendant involved a juvenile in his drug offense.

Defendant also challenges the district court's enhancement of his sentence for being an "organizer, leader, manager or supervisor" of criminal activity under U.S.S.G. § 3B1.1(c). We review the district court's legal conclusions regarding the application of Sentencing Guidelines de novo; however, we accept the district court's findings of fact unless they are clearly erroneous. *United States v. Gort–DiDonato*, 109 F.3d 318, 320 (6th Cir.1997).

■ In determining whether a defendant qualifies for an enhancement under

fendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable

for an offense as a principal, accomplice, or conspirator.
U.S.S.G. § 1B1.3, comment. (n.1).

§ 3B1.1, the sentencing court should consider

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others....

U.S.S.G. § 3B1.1 comment. (n.4). This list does not, however, lay out the elements which must all be satisfied for an enhancement under § 3B1.1 to be proper. Rather, it merely recites some of the factors the court should consider. *United States v. Paulino,* 935 F.2d 739, 757 (6th Cir.1991). "All that is required for enhancement under § 3B1.1 is the participation of at least two culpable individuals so that leadership of some criminal enterprise or organization, however minimal, can be claimed." *Id.*

■ There was clearly participation by at least two culpable individuals here—defendant, who admitted to possessing cocaine with intent to distribute, and the female juvenile, who was in possession of large quantities of cocaine on the day in question. Likewise, the facts before the district court clearly supported a finding of at least minimal leadership by defendant in the criminal activity. As discussed above, Leach testified that defendant negotiated with purchasers, handled all large transactions, and instructed the juvenile to hide the cocaine. The facts as found by the district judge support the conclusion that an enhancement was proper.

■ Finally, defendant contends that the district court erred when it refused to grant him a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. Such a determination by a district court is given "great deference" on review, "given the unique opportunity of the district court to extensively observe ... and evaluate" a defendant's acceptance of responsibility. *Barrett,* 890 F.2d at 868–69. Thus, the district court's determination will not be overturned unless it is clearly erroneous. *Id.*

In *United States v. Wolfe,* 71 F.3d 611 (6th Cir.1995), this court held that

[t]he district court did not clearly err in finding that Wolfe had not, in fact, accepted responsibility for his crimes under U.S.S.G. § 3E1.1. Wolfe hedged in a number of respects[.] ... Given the exculpatory nature of the personal statement that Wolfe made, the district court did not err, let alone clearly err, in concluding that Wolfe had not accepted full responsibility for his criminal acts. *See United States v. Wallace,* 16 F.3d 1223, 1994 WL 43460 at 1 (6th Cir.1994) (per curiam) (finding no clear error in district court's denial of an acceptance of responsibility adjustment because "acceptance of responsibility has to be an acceptance without excuses").

*Wolfe,* 71 F.3d at 616.

■ Likewise, in *United States v. Greene,* 71 F.3d 232 (6th Cir.1995), this court held that

[w]here, as the district court found here, a defendant concocts a story that excuses his illegal conduct, a court may find no acceptance of responsibility. Even if the excuse is not a legal justification sufficient to negate criminal liability, it still might demonstrate the defendant's unwillingness to admit his culpability.

*Greene,* 71 F.3d at 235. As defendant notes, the inquiry regarding acceptance of responsibility must focus on accepting responsibility for the offense of conviction, not for illegal conduct in general. *See United States v. Moored,* 997 F.2d 139 (6th Cir.1993).

■ At sentencing, the district court gave defendant an opportunity to make a statement to the court before a final sentence was handed down, and defendant did so. He claimed that he only became involved in drug transactions at the urging of DEA agents, in order to gather information that might be helpful to his brother, who was apparently also facing legal troubles. Defendant stated that he only accompanied the juvenile on drug transactions to learn the identity of her source. Defendant also specifically denied knowledge of the drugs and money in the female juvenile's possession at the time of their March 9, 1995 arrest, and stated, "I did not attempt to sell any drugs to nobody. I

was just around the people that had the drugs ... for that one reason ... helping my brother." Under *Wolfe, Greene,* and *Moored,* the district court cannot be said to have erred in determining that defendant had not accepted responsibility for his acts, and that he was not entitled to a downward adjustment under § 3E1.1.

The judgment of the district court is hereby **affirmed**.